DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| KELLEY MALA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 2007-85 |
| | ) |
| MARIA PALMER, NORMA AYUSO, | ) |
| SONIA T. COLON, MAYTHE | ) |
| SANTIAGO, JORGE L. PRENDES, | ) |
| HILARY HODGE, JR, and JUAN | ) |
| CLEMENTE, | ) |
| | ) |
| Defendants. | ) |

**ATTORNEYS:**

**Kelley Mala**
  *Pro se plaintiff.*

**Jason Cohen, AUSA**
St. Thomas, U.S.V.I.
  *For the defendants.*

### MEMORANDUM OPINION & ORDER

**GÓMEZ, C.J.**

Before the Court is the motion by Maria Palmer ("Palmer"), Norma Ayuso ("Ayuso"), Sonia T. Colon ("Colon"), Maythe Santiago ("Santiago"), Jorge L. Prendes ("Prendes"), Hilary Hodge, Jr. ("Hodge"), and Juan Clemente ("Clemente")(collectively the "defendants") to dismiss this matter based on improper venue[1].

---

[1] The defendants have also moved to dismiss this matter on several other grounds, including failure to state a claim upon which relief may be granted, issue preclusion, and the improper service of defendant Ayuso. The defendants also seek dismissal of this complaint because they assert that the Court should revoke Mala's *in forma pauperis* status. The Court will confine its discussion in this Memorandum Opinion to the defendants' venue argument.

In the alternative, the defendants seek a transfer of this case to the District of Puerto Rico.

## I. FACTS

On August 11, 2005, the plaintiff, Kelley Mala ("Mala"), was on board his 21-foot boat, off the coast of Puerto Rico. Defendants Clemente and Prendes, who worked as Marine Enforcement Officers, along with other persons allegedly seized property from Mala at gunpoint. Among the items taken from Mala were $1500, a religious garment belt, and Mala's travel bag[2].

In November 2005, Mala filed a grievance against defendants Ayuso and Palmer alleging a violation of the Department of Homeland Security's enforcement standards pursuant to 8 C.F.R. § 287.10. He did not receive a response to his grievance.

In January 2007, Mala petitioned for the return of his property in the District Court of Puerto Rico[3]. The government responded to his motion by noting that Mala's boat "was sold for $4800.00 pursuant to the Junker's Provision of Title19 [sic], United States Code, Section 1612." (Compl., Ex. 2.) It further noted that: "[a]t this time, the Government wishes to inform the

---

[2] Mala asserts that inside the travel bag were IDs, but does not further specify the contents of the bag.

[3] Mala's petition was made in the course of pleadings in a criminal action in the District of Puerto Rico, *United States v. Mala*, Criminal No. 05-286.

Court and the defendant that it will not be instituting said civil forfeiture proceedings and have instructed Customs and Border Protection to return the $4800.00 to the defendant." (*Id.*)

Mala states that he refused to accept that amount, finding it deficient. He avers that the actual value of his vessel was $16,000.

In November 2007, Mala filed another action for the return of his property[4]. He alleges that defendants, Colon and Santiago were instructed to repay him for the loss of his vessel, but failed to reimburse him.

In 2008, Colon sent Mala a letter stating that: "[a]fter a careful review and analysis of the above referenced case, it was determined to refund the proceeds of the sale of the vessel that was seized in th[e] case." (Ex. 5, Compl.) The letter conditioned the return of such proceeds on Mala's submission of a Hold Harmless Agreement that was enclosed thereto.

Thereafter, Mala received a letter from the Department of Homeland Security informing him that the claim he filed against the Department of Homeland Security had been denied. It further apprised him of his right to sue for damages for his property loss pursuant to 28 U.S.C. § 2401(b). He now brings this action

---

[4] Mala asserts that on or about this time, he "file[d] Tort Claims," but does not indicate where such action was filed.

alleging:(1) a civil conspiracy to deprive him of his First, Fourth, and Fourteenth amendment rights; (2) fraud; and (3) fraud-in-the inducement.

## II. DISCUSSION

Venue for federal cases for which jurisdiction is not based solely on diversity of citizenship is governed by 28 U.S.C. § 1391(b) ("section 1391(b)"). Section 1391(b) provides in pertinent part:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

It is a defendant's responsibility to raise a venue objection, as "[v]enue is a privilege provided to the defendant . . . and it is waived if it is not expressly asserted." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 884 n.2 (3d Cir. 1995). "[E]ven where a defect in venue has been properly raised, a question remains whether the case should be dismissed or transferred to a district in which venue would be proper." *Sinwell v. Shapp*, 536 F.2d 15, 19 (3d Cir. 1976).

The dismissal of a case filed in a federal court placing venue in the wrong district is governed by 28 U.S.C. § 1406(a). Such a case may be dismissed, or in the interests of justice, transferred to a district court where venue is appropriate. 28 U.S.C. § 1406(a).

### III. ANALYSIS

The defendants challenge the placement of venue in this Court. They argue that a more appropriate forum for this action is the District of Puerto Rico. Specifically they assert that "the named defendants reside in different states/territories, a substantial part of the events giving rise to the claim occurred in, and the property in question is situated in, Puerto Rico . . . ." (Defs.' Mem. of P. & A. in Supp. of Mot. to Dismiss 11.)

The defendants further claim that Mala's filing of his action in this Court appears to be an "attempt[] to circumvent the provisions governing venue." (*Id.* at 12.) They note that the complaint originally only named two federal officers, both residents of Puerto Rico, "but was later amended to add Hilary Hodge, a resident of the U.S.V.I., as a named defendant." (*Id.*)

Mala cannot establish venue in this Court under the first test for venue under section 1391(b). As only one defendant, Hodge, is a resident of the Virgin Islands, and all other defendants reside in Puerto Rico, all of the defendants do not

reside in the same State. *See* 28 U.S.C. § 1391(b)(stating that venue is appropriate in "a judicial district where any defendant resides, if all defendants reside in the same State").

The Court thus turns to the second test under section 1391(b), whether "a substantial part of the event or omissions giving rise to the claim occurred, or a substantial party of the property that is the subject of the action is situated" in the Virgin Islands.

In *Leroy v. Great Western United Corp.*, 443 U.S. 173 (1979), the Supreme Court discussed the application of this second test under section 1391(b). There, the Supreme Court addressed the appropriate venue for a claim against Idaho, New York, and Maryland officials, by a corporation challenging the enforcement of their respective state takeover laws. These laws established requirements for individuals who acquired substantial portions of the stock of companies operating in their states. The plaintiff, Great Western United Corp. ("Great Western"), claimed such laws violated federal and constitutional law. *Leroy*, 443 U.S. at 175.

Great Western, a publicly-owned Delaware corporation, with its executive headquarters in Dallas, Texas, attempted to take over an Idaho-based company, Sunshine Mining and Metal Co.("Sunshine"). Sunshine and its subsidiary were also

conducting business in New York and Maryland.

After Great Western encountered delays with its tender offer from Idaho officials, it filed suit in the Northern District of Texas, seeking declaratory relief that the Idaho, New York, and Maryland takeover laws were invalid to the extent that they attempted to improperly regulate interstate tender offers.

The District Court found that venue could not be established in the Northern District of Texas pursuant to 1391(b)[5]. On review, the Court of Appeals for the Fifth Circuit disagreed, determining that venue was appropriate under section 1391(b). The Fifth Circuit reasoned that Dallas was the site where the claim arose, because it was there that Idaho officials "'invalidly prevented Great Western from initiating a tender offer for Sunshine.'"[6] *Id.* (quoting *Great W. United Corp.* v. *Kidwell,* 557 F.2d 1256, 1273 (5th Cir. 1978), *rev'd Leroy v. Great W. United Corp.*, 443 U.S. 173 (1979)). The Fifth Circuit also noted that Dallas would represent the only forum available for the adjudication of the claims against New York, Maryland, and Idaho.

---

[5] However, the district court concluded that venue in the Northern District of Texas was suitable under a special venue provision in § 27 of the Securities Exchange Act of 1934.

[6] The Deputy Administrator of Securities of the Idaho Department of Finance sent a letter of objections to Great Western's office in Dallas.

The Supreme Court did not find the Fifth Circuit's logic consistent with the language of section 1391(b):

> Moreover, the plain language of § 1391(b) will not bear the Court of Appeals' interpretation. The statute allows venue in "the judicial district . . . in which the claim arose." Without deciding whether this language adopts the occasionally fictive assumption that a claim may arise in only one district, it is absolutely clear that Congress did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts. In our view, therefore, the broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility-in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)-may be assigned as the locus of the claim.
>
> ... [T]he claim involved has only one obvious locus-the District of Idaho. Most importantly, it is action that was taken in Idaho by Idaho residents-the enactment of the statute by the legislature, the review of Great Western's filing, the forwarding of the comment letter by Deputy Administrator Baptie, and the entry of the order postponing the effective date of the tender by Finance Director McEldowney-as well as the future action that may be taken in the State by its officials to punish or to remedy any violation of its law, that provides the basis for Great Western's federal claim. For this reason, the bulk of the relevant evidence and witnesses-apart from employees of the plaintiff, and securities experts who come from all over the United States is also located in the State.

*Leroy,* 443 U.S. at 183 (internal citations and footnotes omitted).

Here, the unconstitutional seizure is alleged to have

*Mala v. Palmer et al.*
Civil No. 2007-85
Order
Page 9

occurred in the District of Puerto Rico.  All of the defendants, save one, reside in Puerto Rico.  The witnesses and documents related to seizure are located in Puerto Rico.  As such, Mala's claims clearly arose in Puerto Rico.  There is no "approximately equal plausibility" that his claims arose in this district. *Leroy*, 443 U.S. at 183.  Mala has thus failed to establish a right to try his case in this Court.  *See e.g.*, *In re Levi,* 314 Fed. Appx. 418, 419 (3d Cir. 2008)(finding that plaintiff had not "established that he had a clear and indisputable right to have case heard in the District of Columbia," where "at least most of the defendants reside in Pennsylvania and the actions alleged in the complaint occurred in Pennsylvania.").  The Court finds that the District of Puerto Rico, where his claims arose, represents a more appropriate venue for the litigation of Mala's claims.

    The defendants assert that Mala made a calculated determination to file his action here.  They note that the District Court of Puerto Rico has previously ruled unfavorably to him.  The Court is aware of the plaintiff's previous filing of a *Bivens*[7] action in the District of Puerto Rico, involving some of the defendants named in this action, *Mala v. Negrón, et al.*, No.

---

[7]*Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

06-1149, slip op. (D.P.R. Sept. 28, 2007)[8].  Nevertheless, the Court notes that the plaintiff is a *pro se* litigant, with ties to the Virgin Islands.  Mala may have been unacquainted with the venue provisions and mistakenly believed that venue was appropriate here.  The Court thus concludes that the interests of justice favor transfer rather than dismissal in this instance.

## IV. <u>CONCLUSION</u>

The premises considered it is hereby

**ORDERED** that the defendants' motion to transfer venue is **GRANTED**; and it is further

---

[8] The Court notes that one of the defendants' arguments for dismissal of this matter is that Mala's claims are barred based on the doctrine of issue preclusion.  They argue that the District of Puerto Rico previously considered the merits of this case in *Mala v. Negrón, et al.*  Issue preclusion, also known as collateral estoppel, bars parties from relitigating an issue that has previously been actually litigated.  *Peloro v. United States*, 488 F.3d 163, 174 (3d Cir. 2007).

> The prerequisites for the application of issue preclusion are satisfied when: (1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.

*Burlington Northern R. Co. v. Hyundai Merchant Marine Co.*, 63 F.3d 1227, 1232 (3d Cir. 1995)(quoting *In re Graham,* 973 F.2d 1089, 1097 (3d Cir. 1992)(alterations in original).

In light of the Court's finding that the District Court of the Virgin Islands is the improper venue for the litigation of this matter, the Court will not rule on such matters.

**ORDERED** that the Clerk of the Court is directed to transfer the file in this case to the United States District Court for the District of Puerto Rico.

                                 **S\_____**
                                   **CURTIS V. GÓMEZ**
                                      **Chief Judge**